UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
JONATHAN C. ELFAND and LENORE ELFAND,                             :
                                                                  :
                              Plaintiffs,                         :
                                                                  :
              -v-                                                 :        25 Civ. 7170 (JPC)
                                                                  :
CITY OF NEW YORK, *et al.*,                                       :        OPINION AND ORDER
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

     *Pro se* Plaintiffs Jonathan Elfand and Lenore Elfand seek a temporary restraining order and preliminary injunction enjoining certain Defendants from entering their business without warrants, conducting warrantless searches, padlocking their business's premises, and enforcing the laws under which those Defendants are authorized to engage in such activities. Dkt. 1 ("Compl.") ¶ 132(2); Dkt. 4 ("TRO") ¶ 2. But Plaintiffs lack standing to assert their business's rights for the claims subject to emergency relief. The Court therefore denies their motion for emergency relief without prejudice.

## I. Background

### A.    Factual Background

     Plaintiffs challenge a handful of state and local laws: Sections 10(8), 11(3), and 132(1)(b) of the New York Cannabis Law ("NYCL"); Sections 7-551(f) and 7-552(a) of New York City's Administrative Code; and Section 42-04(b) of Title 19 of the Rules of the City of New York ("RCNY") (together, the "Challenged Laws"). Compl. ¶¶ 132(1)-(2); TRO ¶¶ 1-2. The Court first explains how the Challenged Laws operate before turning to Plaintiffs' particular allegations.

1.  **The Challenged Laws**

In 2021, New York's legislature passed the Marihuana Regulation and Taxation Act ("MRTA"), which simultaneously legalized cannabis and established a regulatory framework around its production and sale.  *See* 2021 Sess. Law N.Y. Ch. 92.  Relevant here, the MRTA created two enforcement agencies—the Cannabis Control Board ("CCB") and the Office of Cannabis Management ("OCM")—and a licensing regime for those wishing to sell cannabis within the state.  *See, e.g.*, *id.* Art. II (New York State Cannabis Control Board), Art. IV (Adult-Use Cannabis), Art. VI (General Provisions).  As originally enacted, the MRTA prohibited anyone from cultivating, processing, distributing for sale or selling at wholesale or retail, or delivering to consumers "any cannabis [or] cannabis product . . . within the state without obtaining the appropriate registration, license, or permit therefor required by [the statute] unless otherwise authorized by law."  *Id.* § 125.  But by 2024, the legislature identified a recurring problem: "unlicensed businesses selling cannabis illegally."  Dkt. 58 ("Lerer Decl."), Exh. A (Memorandum in Support of Public Protection and General Government Article VII Legislation) Part G.  To address that problem, the legislature sought to "strengthen the enforcement authority of [OCM] to expedite the closure of" such unlicensed entities and to "provide additional enforcement authority to localities, allowing them to combat illicit cannabis sales through their own laws and resources."  *Id.*

The legislature accordingly amended the MRTA—now known as the NYCL—to bolster state and local enforcement authority over unlicensed cannabis distributors.  *See* 2024 Sess. Law N.Y. Ch. 55 Part G.  Statewide, the NYCL now authorizes OCM to conduct "regulatory inspections of any place of business . . . where cannabis [or] cannabis product[s] . . . are cultivated, processed, manufactured, distributed, stored, or sold, irrespective of whether a registration, license, or permit has been issued under this [statute]."  NYCL § 11(3).  CCB is granted a similar power to conduct

regulatory inspections. *Id.* § 10(8).

OCM and CCB also have the authority to "issue and execute an order to seal a building or premises of any unlicensed businesses in which any person is engaged in conduct" violating certain provisions of the statute, including the general prohibition against unlicensed cannabis sales in Section 125. *Id.* § 138-a(11); *accord id.* § 138-b(1). A sealing order takes immediate effect "upon a finding . . . of an imminent threat to the public health, safety, and welfare." *Id.* § 138-b(3). The factors "determin[ing] an imminent threat to public health, safety, and welfare" are documented sale to minors; unlicensed processing of cannabis products at the premises; orders issued after an inspection where the person engaged in the unlicensed activity acted violently, tumultuously, or in a way indicating an intent not to comply with orders to cease the unlicensed activity; documented presence of unlawful firearms; proximity to schools, houses of worship, or public youth facilities; the presence of products deemed unsafe based on reports of illness or hospitalization; and sales or offers to sell cannabis products that are not tested or labeled lawfully. *Id.* § 138-b(4). A business that has been sealed immediately is entitled to a hearing before an administrative law judge within three business days of requesting such hearing, with a determination to be rendered four business days after the hearing. *Id.* § 138-b(3). The administrative law judge's determination may then be appealed to CCB. *Id.* § 17(8). A sealing order automatically lasts for one year but may be vacated before then upon a showing "that the unlicensed activity has been abated." *Id.* § 138-b(9). The State has enacted rules further developing OCM's and CCB's authority to conduct regulatory inspections and issue sealing orders. *See* 9 N.Y.C.R.R. § 133.25.

Locally, the NYCL now lets "[a]ny county or city . . . adopt a local law authorizing an officer or agency to conduct regulatory inspections of any place of business located within the county or city." NYCL § 131(3)(b). As the law specifies, "[a]ny such regulatory inspection shall only occur during the operating hours of a place of business and be conducted for purposes of civil

administrative enforcement with respect to premises lacking applicable registrations, licenses or permits issued pursuant to this [statute]." *Id.* The 2024 Amendment also amended New York City's Administrative Code. *See* 2024 Sess. Law N.Y. Ch. 55 Part G § 11; *see also Moon Rocket Inc. v. City of New York*, No. 24 Civ. 4519 (JPO), 2025 WL 887583, at *1-2 (S.D.N.Y. Mar. 21, 2025) (describing this statutory and regulatory background). Under Section 7-552 of the Administrative Code, which Plaintiffs challenge, *see* Compl. ¶ 75, the "office of the city sheriff shall have the authority to conduct regulatory inspections of any place of business, including a vehicle used for such business, where cannabis, cannabis product, or any products marketed or labeled as such, are sold, or offered to be sold, where no registration, license, or permit has been issued pursuant to the [NYCL]." N.Y.C. Admin. Code § 7-552(a). The Administrative Code likewise places certain guardrails to ensure that such regulatory inspections "are administrative in nature." *Id.* § 7-552(a)(1)-(3). The Sheriff's Office may execute an order to seal a building or premises where a person is engaged in conduct prohibited by Section 7-551(a) of the Administrative Code (which incorporates certain prohibitions in the NYCL) and which poses an imminent threat to the public health, safety, and welfare as defined by Section 138(b) of the NYCL. *Id.* § 7-552(b)(2). Through regulatory rulemaking, the City's Department of Finance ("DOF") has further fleshed out the framework for the Sheriff's Office to conduct administrative inspections and seal unlicensed places of business. 19 RCNY § 42-04. In particular, Plaintiffs challenge Section 42-04(b) of Title 19 of the RCNY, *see* Compl. ¶ 76, which allows the Sheriff to "conduct regulatory inspections" for "the purpose of detecting administrative violations"—namely the unlicensed sale of cannabis, 19 RCNY § 42-04(b).

As for sealing orders, the New York City Office of Administrative Trials and Hearings ("OATH") is empowered, upon a hearing, to make a recommendation to the Sheriff's Office on whether such an order was issued in accordance with the Administrative Code. N.Y.C. Admin.

Code §§ 7-551(c), 7-552(b)(2).  The Sheriff "shall thereafter make a determination with respect to continuation of such order to seal upon review of such recommendation."  *Id.* § 7-552(b)(2).  As with a sealing order executed by OCM and CCB, a Sheriff's sealing order automatically lasts for one year but may be vacated before then upon a showing "that the unlicensed activity has been abated."  NYCL § 138-b(9); 19 RCNY § 42-04(h).

Violators of the State NYCL and the City Administrative Code are subject to civil penalties.  *See* NYCL § 132; N.Y.C. Admin. Code § 7-551(a).  Plaintiffs specifically challenge NYCL Section 132(1)(b), *see* Compl. ¶ 73, which allows for the assessment of a civil penalty if a person engaging in unlicensed cannabis sales "refuses to permit [OCM] or [CCB] from performing a regulatory inspection" and authorizes the New York Attorney General to apply to a court for an order "granting" OCM or CCB "access to such place of business" if the court determines "that there is reasonable cause to believe that such place of business . . . does not possess a valid registration, license, or permit."  NYCL § 132(1)(b).  Section 7-551(a) of the Administrative Code similarly authorizes civil penalties, and specifies that any penalty "may only be issued against the business that is conducting the unlicensed activity or an individual owner of the business."  N.Y.C. Admin. Code § 7-551(a).  Plaintiffs challenge the Administrative Code's definition of unlicensed activity under Section 7-551(f), *see* Compl. ¶ 74, which defines unlicensed activity as "unlawfully selling cannabis, cannabis product, or any product marketed or labeled as such without obtaining the appropriate registration, license, or permit therefor," N.Y.C. Admin. Code § 7-551(f).

The NYCL also establishes a class A misdemeanor for the knowing and unlawful sale of "any cannabis or cannabis products for which the sale of such products requires a license, permit, or registration" where the person "owns and/or is principally responsible for the operation of a business where such products were sold, given, or caused to be sold or given without having obtained a valid license, permit or registration therefor."  NYCL § 132(8).  But OCM and CCB

are not expressly authorized to engage in inspections to pursue such misdemeanors, nor do Plaintiffs challenge that provision. And the inspections the Sheriff's Office is authorized to carry out are to "be conducted for purposes of civil administrative enforcement with respect to premises lacking applicable registrations, licenses or permits issued pursuant to the [NYCL], and in furtherance of the purposes of such law, provided that nothing herein shall limit any enforcement action under law when illegal activity is observed or occurs during such inspection." N.Y.C. Admin. Code § 7-552(a)(2).

### 2. The Elfands[1]

Plaintiffs Jonathan and Lenore Elfand are "member owners of Elfand Organization LLC," which does business as Empire Cannabis Clubs ("Empire"). Compl. ¶¶ 34, 57. According to Plaintiffs, Empire is a "membership-based entity under New York's Corporation Law" whose "mission is to facilitate social, recreational, and cultural cannabis experiences for adults while enabling the transfer of cannabis between the club and its members on a not-for-profit basis." *Id.* ¶ 57. In other words, "Empire's members purchase cannabis from the club at the club's acquisition cost, with no markup." *Id.* It is undisputed that "Empire remains unlicensed" under the NYCL. *Id.* ¶ 61.

Plaintiffs allege that "the State and City have engaged in a sustained campaign of warrantless enforcement actions against Empire." *Id.* ¶ 58. In July 2023, State agents associated with the Department of Taxation and Finance ("DTF") inspected various Empire locations. *Id.* ¶ 59.[2] The parties dispute certain aspects of the July 2023 inspections: Plaintiffs allege that "agents

---

[1] When resolving a motion for a preliminary injunction, "a court may consider the entire record including affidavits and other hearsay evidence." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 181 (S.D.N.Y. 2020) (internal quotation marks omitted). The Court accordingly considers the declarations and attached exhibits the parties submitted in connection with the motion. *See* Dkt. 6 ("Jonathan Emergency Decl."); Dkt. 7 ("Lenore Emergency Decl."); Dkt. 55 ("Barbitsch Decl."); Dkt. 56 ("Paolucci Decl."); Dkt. 57 ("Haughney Decl."); Lerer Decl.; Dkt. 60 ("Ikard Decl.").

[2] DTF's authority to inspect Empire's locations was under Section 496-D of the New York

from DTF *and* the OCM" conducted these "raids," Compl. ¶ 59 (emphasis added), while the State

Defendants[3] assert that only DTF agents were involved, *see* Haughney Decl. ¶ 5.  Plaintiffs further

allege that they, "two managers, and a security guard were arrested and charged with obstruction

solely for insisting on a warrant before allowing entry," while "[s]taff and patrons were detained

and searched, and cannabis products and currency were seized."  Compl. ¶ 59.  The State

Defendants, for their part, claim that "Jonathan Elfand was detained for approximately ten minutes

while a search was ongoing to prevent a perceived risk of escalation," "[s]tore employees were at

most issued summons[es], not arrested," and "Lenore Elfand's arrest was not by any means based

on her simply insisting on a warrant as alleged."  Dkt. 54 ("State Defts. Response") at 4-5 (citing

Paolucci Decl. ¶¶ 7-19; Barbitsch Decl. ¶¶ 7-14).  Rather, the State Defendants claim that Jonathan

Elfand "was not ultimately arrested," that he "was not given a summons," and that he "was not

penalized civilly or criminally for his initial refusal to consent to the inspection," Paolucci Decl.

¶ 18, while Lenore Elfand was arrested because authorities suspected that she had directed steps

"to physically prevent the inspection from taking place," Barbitsch Decl. ¶ 13.  For present

purposes, the Court need not resolve those factual disputes.

"From May 2024 onward," Plaintiffs allege, "Empire locations have been repeatedly raided

by officers from the Sheriff, [the New York City Police Department ('NYPD')], and OCM."

Compl. ¶ 60.  (The State Defendants again disclaim OCM's involvement in those inspections.  *See*

Haughney Decl. ¶¶ 5-10.)  These raids resulted in the Sheriff's Office issuing eight sealing orders

---

State Tax Law, which authorizes DTF to "conduct regulatory inspections during normal business
hours of any place of business, including a vehicle used for such business, where adult-use
cannabis products are distributed, placed, stored, sold, or offered for sale."  N.Y. Tax Law
§ 496-D(a); *see also* Paolucci Decl. ¶¶ 3-4, 7.  Plaintiffs have not challenged this provision of the
Tax Law.

[3] As defined again at *infra* I.B, the "State Defendants" are Governor Kathy Hochul, OCM
Executive Director Felicia Reid, CCB Chair Jessica Garcia, and DTF Acting Commissioner
Amanda Hiller, all in their official capacities.

and orders to cease unlawful activity, padlocking the premises, and seizing over a thousand pounds of cannabis products.  Ikard Decl., Exh. C at 22-37, 66-78.  After Empire participated in OATH hearings, OATH recommended that the sealing orders remain in effect, and the Sheriff's Office issued final determinations upholding the sealing orders.  *Id.* at 38-55, 56-63.

Plaintiffs claim that they "along with other staff" are "physically detained" during these inspections "each time" they "demand a warrant."  Jonathan Emergency Decl. ¶¶ 3-4, 7; Lenore Emergency Decl. at 2-5.  These detentions, Plaintiffs assert, arise from their roles which "require[] [them] to walk to the door whenever enforcement agents arrive, to support security staff and to demand a warrant before entry."  Jonathan Emergency Decl. ¶¶ 3, 7; Lenore Emergency Decl. at 2-5.  Plaintiffs further allege a series of 2025 run-ins with the Sheriff's Office and the NYPD, Jonathan Emergency Decl. at 4-5, including one post-dating the filing of this lawsuit during which Jonathan Elfand claims that he "was detained, patted down, threatened, shoved, and effectively told by officers to 'drop the suits,'" Dkt. 42 (Renewed Emergency Request for Interim Relief) at 2.

As Plaintiffs openly acknowledge, "[s]ince the initiation of enforcement actions against Empire," they have "consistently pursued legal remedies" in other courts "to challenge the unconstitutionality of New York State and City cannabis enforcement laws."  Compl. ¶ 62; *see also* Dkt. 5 (Emergency Affirmation for Service in Support of Order to Show Cause for Temporary Restraining Order) ¶ 1 ("We have diligently sought relief from state courts to halt enforcement of these facially unconstitutional laws, filing multiple emergency requests for temporary restraining orders and preliminary injunctions.  Despite these efforts, no court to date has enjoined the enforcement provisions at issue."); Jonathan Emergency Decl. ¶¶ 18-22 (similar); Dkt. 23 (Motion for Expedited Order to Show Cause Hearing for Temporary Restraining Order) at 1 (similar).  In September 2024, Jonathan Elfand brought an action in New York Supreme Court, New York County, on behalf of himself and other Empire employees; that action was dismissed for lack of

standing, as the court held that Empire—not Jonathan Elfand—needed to bring the suit. *Elfand v. Adams*, No. 101111/2024, 85 Misc. 3d 1042 (N.Y. Sup. Ct. N.Y. Cnty. 2024). A second suit was then brought by the Elfand Organization in New York Supreme Court, Kings County, in which the court found that on the merits, the constitutional attack to the Challenged Laws was unlikely to succeed. *Elfand Org. LLC v. State of N.Y.*, No. 507559/2025 (N.Y. Sup. Ct. Kings Cnty. July 31, 2025), NYSCEF No. 57. Empire also sought to intervene in another case in New York Supreme Court, Albany County, but the court denied leave to intervene. *Super Smoke n' Save LLC v. N.Y. State Cannabis Control Bd.*, No. 908421-2024 (N.Y. Sup. Ct. Albany Cnty. May 6, 2025), NYSCEF No. 285. Still a fourth case was also filed in New York Supreme Court, New York County, on August 14, 2025, in which the court denied the Elfand Organization's application for a temporary restraining order. *Elfand Org. LLC v. State of N.Y.*, No. 161282/2025 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 28, 2025), NYSCEF No. 10.

Under the one-year automatic expiration of a sealing order, *see* NYCL § 138-b(9), at least two of the Sheriff's Office's sealing orders expired on or about August 29, 2025, and Plaintiffs advise that Empire plans to resume its activities at those locations. Jonathan Emergency Decl. ¶ 27; Lenore Emergency Decl. at 2-3 & Exh. A.

**B.    Procedural Background**

Plaintiffs commenced this action on August 28, 2025. Dkt. 1. Their Complaint raises a host of claims: (1) that the Challenged Laws violate the Fourth Amendment and Due Process Clause of the Fourteenth Amendment by "allowing law enforcement officers" rather than "neutral and detached magistrate[s]" to "determine probable cause, authorize entry, and impose any penalties," Compl. ¶¶ 77-80; (2) that the Challenged Laws violate the Fourth Amendment because they do not meet the administrative-search exception to the warrant requirement, *id.* ¶¶ 81-99; (3) that by enacting the Challenged Laws, Defendants conspired to deprive Plaintiffs of their

constitutional rights, *id.* ¶¶ 100-105; and (4) that Defendants violated the Takings Clause by seizing "company and personal property" without "legal justification or compensation," *id.* ¶¶ 106-110. *See also id.* ¶¶ 20-23. Liberally construed, the Complaint also alleges a First Amendment claim, *see id.* ¶ 32, and a false-arrest claim, *see id.* ¶¶ 24-25, 111-112. Plaintiffs seek both damages, *id.* ¶¶ 111-115, 132(4)-(5), and injunctive relief "prohibiting defendants from entering, searching, padlocking, or seizing any Empire Cannabis Clubs location or property under the challenged laws absent a judicial warrant," *id.* ¶ 132(2). *See also id.* ¶ 132(1) (also requesting a declaratory judgment that the Challenged Laws "are facially unconstitutional" and a permanent injunction "prohibiting" Defendants "from enforcing the Challenged Laws").

And the Complaint names a host of City and State officials as Defendants. All of the Defendants named are the City of New York, Mayor Eric Adams in his official and individual capacities, Sheriff Anthony Miranda in his official and individual capacities, Commissioner of the New York City Department of Finance ("DOF") Preston Niblack in his official and individual capacities, New York City Council Member Rafael Salamanca, Jr. in his official and individual capacities, Doe Officers 1-100 of the NYPD and the New York City Sheriff's Enforcement Agents, Doe Attorneys 1-10 of the New York City Law Department, the State of New York, Governor Hochul in her official and individual capacities, OCM, CCB, OCM Executive Director Reid in her official and individual capacities, CCB Chair Garcia in her official and individual capacities, DTF Acting Commissioner Hiller in her official and individual capacities, former OCM Executive Director Christopher Alexander in his individual capacity, and former CCB Chair Tremaine Wright in his individual capacity. *See id.* ¶¶ 35-42.

The same day they filed their Complaint, Plaintiffs filed a motion for a temporary restraining order seeking to enjoin "Defendants, their officers, agents, servants, employees, attorneys, and those acting in concert with or being delegated by them . . . from entering the Empire

Cannabis Clubs storefront locations without warrant, conducting warrantless searches, padlocking premises, or enforcing [the Challenged Laws]." TRO ¶ 2; *see also* Jonathan Emergency Decl.; Lenore Emergency Decl. On September 1, 2025, the Court explained that *ex parte* emergency relief was inappropriate and thus ordered Plaintiffs to "promptly serve Defendants with their Complaint, request for a temporary restraining order and preliminary injunction, supporting papers, and a copy of th[at] Order." Dkt. 9 at 1-2 (explaining that the Court had "not ruled on the merits of Plaintiffs' emergency request, and instead simply order[ed] notice and an opportunity for Defendants to be heard"). "Upon the filing of proof of service," the Court ordered that "Defendants shall have fourteen days to file their opposition; Plaintiffs shall have seven days to file any reply." *Id.* at 2.

On September 4, 2025, Plaintiffs purported to file proof of service on various Defendants, including the City of New York, Mayor Adams, Sheriff Miranda, and DOF Commissioner Niblack; plus the State of New York, Governor Hochul, CCB, CCB Chair Garcia, OCM, OCM Executive Director Reid, and DTF Acting Commissioner Hiller. Dkts. 12-22. Counsel appeared on behalf of the State of New York on September 9, 2025. Dkts. 24, 25. While counsel acknowledged that the State of New York had been properly served, it maintained that "service of the State does not constitute proper service on OCM, CCB, DTF, or any state officials sued in their official capacity, as additional steps are required to effect service on them." Dkt. 25 at 1-2 (citing N.Y. C.P.L.R. § 307). "Nor is service on the Office of the Attorney General somehow sufficient to serve various defendants in their individual capacity," the State's counsel maintained. *Id.* at 2 (citing N.Y. C.P.L.R. § 308). The State's counsel further "submit[ted] that the [September 1, 2025] Order is best interpreted as requiring that *all* defendants be properly served prior to them needing to respond to the TRO/PI request," as a "contrary ruling would require all parties to separately brief, and for the Court to separately consider, various piecemeal requests." *Id.* And

the State requested that its time to respond to the Complaint be adjourned "to 30 days after the Court's ruling on Plaintiffs' request" for emergency relief. *Id.* at 3. On September 10, 2025, various City Defendants appeared[4] and joined the State's requests for substantially the same reasons. *See* Dkts. 26, 27.

In response to those requests, the Court ordered on September 10, 2025 that "the fourteen-day deadline to respond to Plaintiffs' request for emergency relief will begin once all the named Defendants have been properly served," excepting Doe Officers 1-100 of the NYPD and the New York City Sheriff's Enforcement Agents and Doe Attorneys 1-10 of the New York City Law Department. Dkt. 28 at 4 & n.2. And for those Defendants who have appeared, the "time to answer or otherwise respond to the Complaint" was extended "to thirty days after this Court's ruling on Plaintiffs' request for emergency relief." *Id.* at 4 (explaining that "other Defendants may request a similar extension after they appear in this case"); *see also* Dkt. 49 (applying the extension to the other Defendants that had since appeared). The Court made clear, however, that Plaintiffs were "welcome to narrow their requested emergency relief to a smaller class of Defendants who are properly served." Dkt. 28 at 4.

That same day, Plaintiffs filed a "Supplemental Affirmation Clarifying [the] Scope of Relief," explaining that their emergency-relief request was "directed only to" the "City of New York and its agents in their official capacity" and the "State of New York and its agents in their official capacity." Dkt. 30 at 1. The Court construed Plaintiffs' submission to mean that their request for emergency relief applied to the City, Mayor Adams in his official capacity, Sheriff

---

[4] Counsel with the New York City Law Department filed a Notice of Appearance on behalf of only the City of New York, Dkt. 26, yet that same day counsel also requested an extension of time to respond to the motion for injunctive relief on behalf of the City of New York, Mayor Adams in his official capacity, Sheriff Miranda in his official capacity, DOF Commissioner Niblack in his official capacity, and Council Member Salamanca in his official capacity, Dkt. 27 at 1.

Miranda in his official capacity, DOF Commissioner Niblack in his official capacity, and Council Member Salamanca in his official capacity; along with the State, Governor Hochul in her official capacity, OCM, OCM Executive Director Reid in her official capacity, CCB, CCB Chair Garcia in her official capacity, and DTF Acting Commissioner Hiller in her official capacity. Dkt. 31 at 1-2. As the Court explained on September 11, 2025, while those City Defendants had "been properly served in their official capacities, save for Council Member Salamanca[], who ha[d] not yet been served at all," those State Defendants had not yet been properly served. *Id.* at 2-3. So under the Court's "September 10th Order and Plaintiffs' subsequent narrowing of the scope of relief, the fourteen days to respond to Plaintiffs' emergency request shall not begin until Council Member Salamanca Jr. and the rest of the State Defendants—all in their official capacities—are properly served." *Id.* at 3. But the Court reiterated that "Plaintiffs remain free to further narrow their request for relief." *Id.*

Once more on September 11, Plaintiffs clarified that their pending request for emergency relief was directed to the "City of New York and its agents in their official capacity"—excepting Council Member Salamanca—and "Governor Kathy Hochul, Felicia Reid, Jessica Garcia, and Amanda Hiller, each in their official capacity as state officials." Dkt. 34 at 1. On September 12, 2025, Plaintiffs served those four State Defendants, Dkts. 37-40, and voluntarily dismissed their claims against the State of New York, OCM, and CCB, Dkt. 36.

All told, Plaintiffs' request for emergency relief remains pending as to the following Defendants: the City, Mayor Adams in his official capacity, Sheriff Miranda in his official capacity, and DOF Commissioner Niblack in his official capacity (together, the "City Defendants"); along with Governor Hochul in her official capacity, OCM Executive Director Reid in her official capacity, CCB Chair Garcia in her official capacity, and DTF Acting Commissioner Hiller in her official capacity (together, the "State Defendants"). And the emergency relief sought

is to prevent those Defendants "from entering, searching, padlocking, or seizing any Empire Cannabis Clubs location or property under the challenged laws absent a judicial warrant." Compl. ¶ 132(2); TRO ¶ 2; *see also* NYCL §§ 10(8) (CCB authority to conduct regulatory inspections), 11(3) (OCM authority to conduct regulatory inspections); N.Y.C. Admin. Code § 7-552(a) (City Sheriff's Office authority to conduct regulatory inspections); 19 RCNY § 42-04(b) (same).

Under the terms of this Court's September 10 and September 11 Orders, *see* Dkts. 28, 31, the City Defendants and the State Defendants were to respond to Plaintiffs' request for emergency relief by September 26, 2025, with Plaintiffs having until October 3, 2025 to reply. Dkt. 41. The Court granted the City Defendants' and the State Defendants' requests to extend their deadline to respond to October 1, 2025. Dkts. 45, 48, 49-50. On October 1, 2025, those Defendants filed their respective responses. Dkts. 54-58; 59 ("City Defts. Response"), 60. The Court granted Plaintiffs' requests to extend their time to reply, Dkts. 61-62, 64-65, which they filed on October 14, 2025, Dkt. 63 ("Reply").

On November 3, 2025, the Court held a hearing on the pending motion for emergency relief. *See* Transcript, Nov. 3, 2025 ("Hrg. Tr.").

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "Some cases in the Second Circuit use a different 'serious questions' standard, which 'permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the

injunction." *New York v. Nat'l Science Found.*, No. 25 Civ. 4452 (JPC), 2025 WL 2180478, at *5 n.8 (S.D.N.Y. Aug. 1, 2025) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).  But that standard is inapplicable where, "as here, the preliminary injunction will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," as such an injunction "should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *N.Y. State Firearms Ass'n v. James*, No. 24-1290-cv, --- F.4th ----, 2025 WL 2921746, at *3 (2d Cir. Oct. 15, 2025) (internal quotation marks omitted).  So "plaintiffs must establish a clear or substantial likelihood of success on the merits." *Id.* (internal quotation marks omitted).[5]

"When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021) (*per curiam*).  And "courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 279 (quoting *Winter*, 555 U.S. at 24).

As the Second Circuit has long explained, "[i]t is well established that motions for preliminary injunctions should not be resolved on the basis of affidavits which evince disputed issues of fact," as "[n]ormally, an evidentiary hearing is required to decide credibility issues." *Forts v. Ward*, 566 F.2d 849, 851 (2d Cir. 1977) (collecting cases); *accord State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 83 (2d Cir. 2024) ("[T]here should

---

[5] Because Plaintiffs must establish a clear or substantial likelihood of merits success under the regulatory-scheme standard, *see, e.g.*, *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (collecting cases), the Court need not determine whether the preliminary injunction Plaintiffs seek is prohibitory or mandatory.  *See N.Y. State Firearms Ass'n*, 2025 WL 2921746, at *3 (applying the heightened merits standard without further defining the relief sought as prohibitory or mandatory); *see also N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 36-37 (2d Cir. 2018) (describing the difference between the two types of injunctions and explaining that "[b]ecause mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits" (internal quotation marks omitted)).

generally be an evidentiary hearing when essential facts are in dispute."). Finally, it is also "well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction." *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010); *accord Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

### III. Discussion

As for a clear or substantial likelihood of merits success, both the State and City Defendants oppose Plaintiffs' request for emergency relief on the same three grounds. First, they argue that Plaintiffs "lack standing to bring the claims on which their injunctive relief requests are premised." State Defts. Response at 8-10; City Defts. Response at 8-10. Second, they assert that "even if [Plaintiffs] had standing" to bring those claims, those claims would be barred by *res judicata*. State Defts. Response at 8, 10-12; City Defts. Response at 11-15. And third, they contend that in all events, Plaintiffs' claims lack merit. State Defts. Response at 8, 12-24; City Defts. Response at 16-27. Because the Court agrees with Defendants' first argument—that Plaintiffs lack standing for their claims for emergency relief—it declines to reach the two other grounds raised.

To satisfy Article III of the U.S. Constitution's "'case-or-controversy requirement,' a plaintiff in federal court 'must establish that they have standing to sue.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "The requirements of Article III standing are well established: A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citation modified). As the "party invoking federal jurisdiction bears the burden of establishing these elements," a plaintiff must support the elements of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the preliminary injunction stage, a plaintiff cannot rely on mere allegations

and instead must set forth, by affidavit or other evidence, specific facts, which will be taken to be true, to establish standing." *Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 175 (2d Cir. 2025) (citing *Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (*per curiam*)). But only those specific facts that "are uncontroverted . . . must be 'taken to be true' for [the] standing analysis at the preliminary injunction stage," as a court may assess standing based on "a more developed factual record" before it. *Id.* at 186-87 & n.14 (quoting *Do No Harm*, 126 F.4th at 119) (explaining that a "declaration and affidavit" controverting the plaintiff's facts may be considered as part of the record on standing).

A plaintiff must also "demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted); *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 101-13 (1983). So "where, as here, injunctive relief is sought, a plaintiff cannot meet the injury-in-fact requirement merely by relying on past injury." *Bronx Freedom Fund v. City of New York*, No. 21 Civ. 10614 (JPC), 2024 WL 1329172, at *5 (S.D.N.Y. Mar. 28, 2024). A plaintiff seeking injunctive relief must instead show a "prospective injury" which "is real, immediate, and direct." *Davis*, 554 U.S. at 733-34. Put differently, "[s]uch an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The risk of "*possible* future injury," on the other hand, is "not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted).

For the claims subject to the requested emergency relief, Plaintiffs either are the wrong litigants to raise them or lack standing to do so. Recall Plaintiffs' requested emergency relief: they seek to enjoin Defendants "from entering, searching, padlocking, or seizing any Empire Cannabis Clubs location or property under the challenged laws absent a judicial warrant." Compl. ¶ 132(1)-

(2) (defining the Challenged Laws as NYCL §§ 10(8), 11(3), 132(1)(b); N.Y.C. Admin. Code §§ 7-551(f), 7-552(a); and 19 RCNY § 42-04(b)); *see also* TRO ¶ 2 (seeking to temporarily restrain and enjoin Defendants "from entering the Empire Cannabis Clubs storefront locations without warrant, conducting warrantless searches, padlocking premises, or enforcing [NYCL] §§ 10(8), 11(3); N.Y.C. Admin. Code §[] 7-552(a); 19 RCNY [§] 42-04(b)" (citation modified)). And the constitutional claims underlying Plaintiffs' emergency request are based on the Fourth Amendment and the Fourteenth Amendment's Due Process Clause. *See* Compl. ¶¶ 77-99.

As the Second Circuit has explained, however, "[i]t has been clear for a generation that 'Fourth Amendment rights are personal rights that may not be vicariously asserted.'" *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (citation modified) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).   In the corporate context, it has long been understood that even a corporation's "sole shareholder . . . may not vicariously take on the privilege of the corporation under the Fourth Amendment" as "its immunity is not his immunity." *Lagow v. United States*, 159 F.2d 245, 246 (2d Cir. 1946) (*per curiam*).  So while "a corporate officer or employee in certain circumstances . . . may have standing with respect to searches of corporate premises and records," for "a search of business premises," he must make "a sufficient showing of a possessory or proprietary interest in the area searched." *United States v. Chuang*, 897 F.2d 646, 649-50 (2d Cir. 1990).   But being a corporate officer "with a significant proprietary interest" in the corporation's shares, exercising "significant operational control" over the corporation "and all of its premises" (including where "the areas searched were non-public areas over which ultimate control rested in [the officer's] hands"), and even being "present during" a search are "insufficient" factors "to establish a cognizable Fourth Amendment claim" for the individual officer. *Id.* at 650.

Just so here.  Plaintiffs allege that they own Empire (through the Elfand Organization), Compl. ¶¶ 34, 57, and that they have been present at Empire locations during regulatory

18

inspections (and presumably expect to be present at future inspections), Jonathan Emergency Decl. ¶¶ 3, 7; Lenore Emergency Decl. at 2-5. Such general factors, without more, fall short of establishing Plaintiffs' own Fourth Amendment rights in warrantless searches of Empire's locations. *See Chuang*, 897 F.2d at 649-50. So unlike Empire, Plaintiffs "cannot assert that [their] rights" will be "violated by . . . warrantless entry into the space as a whole." *United States v. Johnson*, No. 21 Cr. 428 (ER), 2023 WL 5632473, at *7 (S.D.N.Y. Aug. 31, 2023); *see also United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533, at *5-7 (S.D.N.Y. Mar. 2, 2019); *United States v. Levin*, No. 15 Cr. 101 (KBF), 2015 WL 5602876, at *1 n.1 (S.D.N.Y. Sept. 23, 2015).

The Court reaches a similar conclusion as to Plaintiffs' due process claim. To the extent that Plaintiffs claim "that any inspections themselves violate the Due Process Clause," the Court agrees with the State Defendants that such an "attempt to challenge inspections on due process grounds" for being without a warrant "is covered by the Fourth Amendment." State Defts. Response at 23 n.17 (quoting *Bryant v. City of New York*, 404 F.3d 128, 135-36 (2d Cir. 2005)). Such a claim, as just explained, belongs to Empire, not Plaintiffs. But even taking the due process claim on its own terms, Plaintiffs would run afoul of "the general principle that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock." *Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995). Indeed, where federal constitutional violations are alleged, it remains the case that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 733, 736 (2d Cir. 1987). For this reason, a plaintiff "has no individual standing to bring a civil rights action under 42 U.S.C. § 1983" where the plaintiff's injuries are "indirectly caused by harm to" the corporation and thus "are not 'distinct' from those of the corporation." *Caravella v. City of New York*, 79 F. App'x 452, 453 (2d Cir.

2003) (summary order); *accord Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, No. 10 Civ. 5442 (MKB), 2012 WL 2992124, at *5 (E.D.N.Y. July 20, 2012) ("A plaintiff does not have individual standing where he or she alleges injuries that are indirectly caused by the harm to the corporation."); *see also Chestnut Hill NY, Inc. v. City of Kingston*, 698 F. Supp. 3d 399, 416-17 (N.D.N.Y. 2023) (collecting cases).

Plaintiffs' request for emergency injunctive relief is premised on harms to Empire. They seek to prohibit Defendants "from entering, searching, padlocking, or seizing any Cannabis Clubs location or property under the challenged laws absent a judicial warrant." Compl. ¶ 132(2); *see also* TRO ¶ 2. As Plaintiffs allege, because of these actions, "Empire Cannabis Clubs sustained destruction of property, loss of goodwill, damaged vendor relationships, and ongoing threats of closure, causing independent injuries warranting damages and injunctive relief." Compl. ¶ 104. Plaintiffs, meanwhile, "endured unlawful detention, physical restraint, humiliation, reputational harm, economic losses, and emotional distress from repeated raids and closures." *Id.* But the "risk of financial loss," for example, derives from the harms to Empire. *Jones*, 836 F.2d at 736; *see Harp v. DeStefano*, No. 3:03 CV 977 (CFD), 2007 WL 2869831, at *4-5 (D. Conn. Sept. 27, 2007) ("As the complaint is drafted, any alleged harm to [the plaintiff]—such as lost income—is purely derivative from the injury to [the corporation] due to his status as [the corporation's] sole shareholder."). Tellingly, at the Court's November 3, 2025 hearing, Plaintiffs themselves conceded that the bulk of the asserted injuries belonged to Empire, not them. *See* Hrg. Tr.

As for Plaintiffs' injuries "separate from those alleged to the corporation," *Harp*, 2007 WL 2869831, at *4—namely injuries arising from alleged unlawful detention and physical restraint— those harms are divorced from the requested injunctive relief. As an initial matter, any Plaintiffs-specific harms arising from the alleged July 2023 detention of Jonathan Elfand and arrest of Lenore Elfand would establish "standing to claim damages" for those incidents, not an injunction. *Lyons*,

461 U.S. at 105-13.  And while Plaintiffs assert that the threat of detention remains if they were to ask inspectors for a warrant, Jonathan Emergency Decl. ¶¶ 3-4, 7; Lenore Emergency Decl. at 2-5; Dkt. 42 (Renewed Emergency Request for Interim Relief) at 2, the State Defendants are correct that the Challenged Laws which Plaintiffs seek to enjoin "contain no such provision" which would "penalize" through detention and restraint "any individual who insists on a warrant or precompliance review before submitting to an invasive search," State Defts. Response at 23 (quoting Compl. ¶ 32).  To the contrary, NYCL Section 132(1)(b)—the only relevant provision Plaintiffs challenge at this stage—merely authorizes the assessment of a civil penalty if a person engaging in unlicensed cannabis sales "refuses to permit [OCM] or [CCB] from performing a regulatory inspection" and allows the New York Attorney General to apply to a court for an order "granting" OCM or CCB "access to such place of business" if the court determines "that there is reasonable cause to believe that such place of business . . . does not possess a valid registration, license, or permit."  NYCL § 132(1)(b); *contra* Reply at 3.[6]

As a result, any forward-looking harm from the threat of such detention would not be fairly traceable to the Challenged Laws, nor would enjoining those laws' application to Plaintiffs redress that harm.  *See Antonyuk v. James*, 120 F.4th 941, 978 (2d Cir. 2024) (explaining that standing requires "a cognizable injury that is traceable *to the challenged provisions* and redressable by the injunction [the plaintiff] seeks" (emphasis added)).[7]  Indeed, nowhere in Plaintiffs' requested emergency relief do they seek to enjoin Defendants from detaining them, as opposed to enjoining Defendants "from entering, searching, padlocking, or seizing *any Empire Cannabis Clubs location or property* under the challenged laws absent a judicial warrant."  Compl. ¶ 132(2) (emphasis

---

[6] Plaintiffs concede that they have "not yet reviewed all fines sent to Plaintiffs" and cannot verify whether they have "received fines under [Section] 132(1)(b)."  Dkt. 75 at 2.

[7] For this reason, Plaintiffs' reliance on First Amendment standing principles, *see* Reply at 5, also falls short.

added); *see also* TRO ¶ 2 (similarly seeking to enjoin Defendants "from entering the Empire Cannabis Clubs storefront locations without warrant, conducting warrantless searches, padlocking premises, or enforcing" the Challenged Laws).

The Court appreciates Plaintiffs' fervent desire for their attack on the Challenged Laws to be heard promptly on the merits. And a suit brought by Empire could very well allow that to happen, provided that Empire is represented by counsel, *see Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007) (explaining that "separate legal entit[ies]" such as corporations and limited liability companies "may appear in federal court only through a licensed attorney"), and can show that its alleged injuries are "sufficiently imminent and substantial," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). But ultimately, Plaintiffs lack standing to bring their claims for emergency relief, depriving this Court of subject-matter jurisdiction and with it the ability to hear the merits of those claims. *See, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016) (explaining that a dismissal "for lack of Article III standing" is "one for lack of subject matter jurisdiction," and "without jurisdiction, the district court lacks the power to adjudicate the merits of the case").

"Because the Court concludes that, at this preliminary stage, Plaintiffs have not shown that the Court likely has subject matter jurisdiction," Plaintiffs have not met their burden to show a clear or substantial likelihood of success on the merits. *Nat'l Science Found.*, 2025 WL 2180478, at *6, *22. "As the Court concludes that Plaintiffs have not shown a likelihood of success on the merits, it does not address the remaining factors for preliminary relief." *Id.* at *6 n.10. "Preliminary relief cannot issue," *id.* at *36, and Plaintiffs' motion for a temporary restraining order and preliminary injunction is thus denied.

## IV. Conclusion

For the above reasons, Plaintiffs' motion for a temporary restraining order and preliminary

injunction is denied without prejudice.  Under this Court's prior Orders, Dkts. 28, 49, the State

Defendants and the City Defendants have thirty days to answer or otherwise respond to Plaintiffs'

Complaint.  Plaintiffs are reminded that they have yet to serve various Defendants named in the

Complaint who have not been voluntarily dismissed.

    SO ORDERED.

Dated: November 21, 2025
      New York, New York

_____
        JOHN P. CRONAN
     United States District Judge