UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JONATHAN C. ELFAND and LENORE ELFAND,      :
:
Plaintiffs,      :
:
-v-                                :      25 Civ. 7170 (JPC)
:
CITY OF NEW YORK, *et al.*,                    :      OPINION AND ORDER
:
Defendants.    :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

*Pro se* Plaintiffs Jonathan Elfand and Lenore Elfand have moved this Court to reconsider its November 21, 2025 Opinion and Order which denied their motion for a temporary restraining order and preliminary injunction enjoining certain Defendants from entering their business without warrants, conducting warrantless searches, padlocking their business's premises, and enforcing the laws under which those Defendants are authorized to engage in such activities. *See Elfand v. City of New York*, No. 25 Civ. 7170 (JPC), 2025 WL 3248807, at *1 (S.D.N.Y. Nov. 21, 2025). For the reasons that follow, Plaintiffs' reconsideration motion is denied.

**I. Background**

The Court assumes familiarity with this case's background. *See id.* at *1-7 (describing in detail the underlying facts and procedural history). For present purposes, the following background suffices: Plaintiffs challenge a handful of laws—referred to in the November 21, 2025 Opinion and Order and herein as the "Challenged Laws"—which allow state and local officials to conduct regulatory inspections of businesses that sell or distribute cannabis without a license. Dkt. 1 ("Compl.") ¶ 132(1)-(2) (listing the Challenged Laws that Plaintiffs seek to enjoin); Dkt. 4 ("TRO") ¶¶ 1-2. Plaintiffs are member owners of Elfand Organization LLC, which does business

as Empire Cannabis Clubs ("Empire"); Empire distributes cannabis without a license. Compl. ¶¶ 34, 57, 61. Plaintiffs allege that the State of New York and New York City "have engaged in a sustained campaign of warrantless enforcement actions against Empire." *Id.* ¶¶ 58, 60. Plaintiffs assert that they are "physically detained" during these inspections "each time" they "demand a warrant." Dkt. 6 ("Jonathan Emergency Decl.") ¶¶ 3-4, 7.

Plaintiffs plead several claims in their Complaint: (1) the Challenged Laws violate the Fourth Amendment and Due Process Clause of the Fourteenth Amendment for giving law enforcement officers, rather than neutral and detached magistrates, the authority to determine probable cause and enter businesses, Compl. ¶¶ 77-80; (2) the Challenged Laws violate the Fourth Amendment because they do not meet the administrative-search exception to the warrant requirement, which requires limits on officers' discretion, *id.* ¶¶ 81-99; (3) the Challenged Laws violate the First Amendment by "penaliz[ing] any individual who insists on a warrant or precompliance review before submitting to an invasive search," *id.* ¶ 32; (4) by enacting the Challenged Laws, Defendants conspired to deprive Plaintiffs of their constitutional rights, *id.* ¶¶ 100-105; (5) Defendants violated the Takings Clause by seizing property without justification or compensation, *id.* ¶¶ 106-110; and (6) Plaintiffs were falsely arrested in July 2023, *id.* ¶¶ 24-25, 59, 111-112. Plaintiffs seek both damages, *id.* ¶¶ 111-115, 132(4)-(5), and injunctive relief "prohibiting Defendants from entering, searching, padlocking, or seizing any Empire Cannabis Clubs location or property under the challenged laws absent a judicial warrant," *id.* ¶ 132(2). Plaintiffs' requested temporary restraining order similarly sought to enjoin Defendants "from entering the Cannabis Clubs storefront locations without warrant, conducting warrantless searches, padlocking premises, or enforcing [the Challenged Laws]." TRO ¶ 2.

After a back-and-forth with the Court about the need to properly serve all the named

Defendants with the Complaint and the motion for emergency relief, Plaintiffs narrowed the scope of their requested emergency relief to two groups of Defendants, referred to as the City Defendants and State Defendants. *See Elfand*, 2025 WL 3248807, at *5-6 (detailing this procedural history and defining the City and State Defendants for purposes of the emergency-relief motion). After both groups of Defendants responded, the Court held a hearing on the pending motion for emergency relief on November 3, 2025. *Id.* at *7.

On November 21, 2025, this Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction without prejudice, holding "that Plaintiffs lack standing for their claims for emergency relief." *Id.* at *8-11. Mindful that a plaintiff must "demonstrate standing for each claim he seeks to press and for each form of relief that is sought," the Court concluded that "[f]or the claims subject to the requested emergency relief, Plaintiffs either are the wrong litigants to raise them or lack standing to do so." *Id.* at *8-9 (internal quotation marks omitted).

First, the Court explained that because "Fourth Amendment rights are personal rights that may not be vicariously asserted," Plaintiffs' allegations fell "short of establishing [their] own Fourth Amendment rights in warrantless searches of Empire's locations." *Id.* at *9 (internal quotation marks omitted). That claim, instead, belonged to Empire—not Plaintiffs. *Id.* As for due process, the Court invoked the similar rule that "where federal constitutional violations are alleged . . . a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Id.* (citation modified) (collecting cases). That was the case here, as "Plaintiffs themselves conceded that the bulk of the asserted injuries belonged to Empire, not them." *Id.* at *10 ("Plaintiffs' request for emergency injunctive relief is premised on harms to Empire.").

The Court acknowledged that Plaintiffs claimed certain "injuries separate from those

3

alleged to" Empire, namely those "arising from alleged unlawful detention and physical restraint." *Id.* (internal quotation marks omitted). The problem for Plaintiffs, however, was that those harms were "divorced from the requested injunctive relief." *Id.* For one, "any Plaintiffs-specific harms arising from the alleged July 2023 detention of Jonathan Elfand and arrest of Lenore Elfand would establish 'standing to claim damages' for those incidents, not an injunction." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-13 (1983)). For another, "while Plaintiffs assert that the threat of detention remains if they were to ask inspectors for a warrant," "the Challenged Laws which Plaintiffs seek to enjoin contain no such provision which would penalize through detention and restraint any individual who insists on a warrant or precompliance review before submitting to an invasive search." *Id.* (internal quotation marks omitted). Rather, "the only relevant provision" that Plaintiffs "challenge[d] at [that] stage" simply "authorizes the assessment of a civil penalty if a person engaging in unlicensed cannabis sales 'refuses to permit [inspectors] from performing a regulatory inspection' and allows the New York Attorney General to apply to a court for an order 'granting [inspectors] access to such place of business.'" *Id.* (quoting N.Y. Cannabis L. § 132(1)(b)).

For this reason, the Court explained, "any forward-looking harm from the threat of such detention would not be fairly traceable to the Challenged Laws, nor would enjoining those laws' application to Plaintiffs redress that harm." *Id.* The Court pointed out that "nowhere in Plaintiffs' requested emergency relief do they seek to enjoin Defendants from detaining them, as opposed to enjoining Defendants 'from entering, searching, padlocking, or seizing *any Empire Cannabis Clubs location or property* under the challenged laws absent a judicial warrant.'" *Id.* (quoting Compl. ¶ 132(2)). And because of this disconnect, "Plaintiffs' reliance on First Amendment standing principles also [fell] short." *Id.* at *10 n.7 (internal citation omitted).

4

Although the Court "appreciate[d] Plaintiffs' fervent desire for their attack on the Challenged Laws to be heard promptly on the merits," the fact that "Plaintiffs lack standing to bring their claims for emergency relief" thus "depriv[es] this Court of subject-matter jurisdiction and with it the ability to hear the merits of those claims." *Id.* at *11.[1] So the Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction without prejudice. *Id.*

In denying Plaintiffs' motion, the Court ordered the State and City Defendants to answer or otherwise respond to Plaintiffs' Complaint within thirty days, and "reminded" Plaintiffs "that they have yet to serve various Defendants named in the Complaint who have not been voluntarily dismissed." *Id.* On November 24, 2025, Plaintiffs moved for a ninety-day extension to serve those Defendants, which would set the service deadline at February 24, 2026, Dkt. 77; the Court partly granted that extension request, extending the service deadline to January 26, 2026, Dkt. 78.

On December 4, 2025, Plaintiffs moved for reconsideration of the Court's Opinion and Order under Local Civil Rule 6.3. Dkt. 79 ("Motion"). The City and State Defendants were given until December 19, 2025, to respond to Plaintiffs' reconsideration motion, and Plaintiffs were given until December 30, 2025, to reply. Dkt. 80. The Court also reset the City and State Defendants' deadline to answer or otherwise respond to the Complaint to "twenty-one days following this Court's resolution of Plaintiffs' reconsideration motion." *Id.* Plaintiffs then sought to deny Defendants an opportunity to respond to the reconsideration motion entirely or, in the alternative, to materially shorten their time to respond. Dkt. 82. The Court denied those requests as "both unsporting and inconsistent with Local Civil Rule 6.3," and explained that any assertions

---

[1] The Court observed that "a suit brought by Empire could very well" result in reaching the merits, "provided that Empire is represented by counsel and can show that its alleged injuries are sufficiently imminent and substantial." *Elfand*, 2025 WL 3248807, at *11 (citation modified).

of urgency and simplicity were "belied" by Plaintiffs' "taking almost the full fourteen days to file their reconsideration motion allotted by Rule 6.3," the same fourteen days to which the City and State Defendants were entitled by rule. Dkt. 81.

The City and State Defendants filed their responses on December 19, 2025. Dkts. 85 ("State Defts. Response"), 86 ("City Defts. Response"). Plaintiffs replied on December 30, 2025. Dkt. 87 ("Reply").

## II. Standard of Review

Local Civil Rule 6.3 instructs that, in seeking reconsideration of a court order denying a motion, the movant must "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." S.D.N.Y. Loc. Civ. R. 6.3. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Cohen v. Jamison*, No. 23 Civ. 1304 (LTS), 2023 WL 3412762, at *2 (S.D.N.Y. May 12, 2023) (explaining that reconsideration is warranted if a movant demonstrates "that the Court overlooked controlling law or factual matters that had been previously put before it" (internal quotation marks omitted)). "The reason for the rule confining reconsideration to matters that were overlooked is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

### III. Discussion

Plaintiffs' motion appears to raise three grounds for reconsideration, but none persuades. *First*, Plaintiffs argue that this Court would have found standing had it considered that the Challenged Laws' "unchecked enforcement discretion results in recurring seizures of 'real people' during inspections." Motion at 1, 7-10. They fault this Court for "not analyz[ing]" whether the Challenged Laws "contain the required discretion-limiting safeguards" under the Fourth Amendment's administrative-search exception, as Plaintiffs' alleged future detention is "a predictable consequence of a statutory framework that places no limits on whom officers may detain or what areas they may invade." *Id.* at 7, 10 (emphasis omitted); *see also* Reply at 5-7. But as the City and State Defendants point out, this ground is simply a thinly disguised merits argument. *See* State Defts. Response at 6; City Defts. Response at 4-5, 7. And the Court did not need to analyze the merits because "[f]or standing purposes," it properly "accept[ed]" them "as valid." *Fed. Elec. Comm'n v. Cruz*, 596 U.S. 289, 298 (2022); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

The Court assumed that Plaintiffs alleged activity that violated the Fourth Amendment—and nevertheless concluded that "[f]or the claims subject to the requested emergency relief, Plaintiffs either are the wrong litigants to raise them or lack standing to do so," including because Plaintiffs' allegations fell short of establishing their "own Fourth Amendment rights in warrantless searches of Empire's locations" and that any harms "separate from those alleged to" Empire were "divorced from the requested injunctive relief." *Elfand*, 2025 WL 3248807, at *9-11 (internal quotation marks omitted).[2] So the Court did not overlook an analysis it appropriately had no cause

---

[2] In other words, the Court assessed which claims Plaintiffs could properly assert on their own behalf, rather than Empire's, and then found that they lacked standing as to the Fourth

to undertake.

  *Second*, Plaintiffs claim that the Court erred in "treat[ing] Plaintiffs' injuries as arising only from the officers' decision to arrest them, rather than from the statute that authorized punishment for asserting a constitutional right." Motion at 11. The Court, instead, should have considered "the facial unconstitutionality of penalizing a person . . . for refusing a warrantless search." *Id.* at 6-7. Under this theory, the Fourth Amendment harm "occurs at the moment the statute authorizes the government to penalize any person for refusing a warrantless search," regardless of whether the statute authorizes detention for noncompliance. *Id.* at 11. But Plaintiffs' novel theory departs from how they described their Fourth Amendment harm earlier in this case. *See* Compl. ¶ 30 ("Plaintiffs were unlawfully detained without probable cause, subjected to physical restraints, and, in some cases, arrested solely for asserting their First and Fourth Amendment rights by requesting a warrant. These deprivations of liberty . . . create a continuing, real, and immediate threat of recurrence warranting prospective relief."); Jonathan Emergency Decl. ¶¶ 3-4, 7. Plaintiffs' new theory thus is improperly raised. *See Steinberg v. Elkman*, No. 15 Civ. 278 (LTS), 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016) ("'[A] party may not advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration." (quoting *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001))); *Associated Press v. U.S.*

---

Amendment claims for which emergency relief was sought. Plaintiffs call this "doctrinal conflation" between the Fourth Amendment and Article III. Reply at 3. But standing "often turns on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500. So there is nothing incongruous about the Court assessing the proper body of claims on the motion presented for which it would then consider standing. Were it otherwise, courts could simply bypass the "general principle" that "a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation," *Elfand*, 2025 WL 3248807, at *9 (citation modified), a principle that Plaintiffs themselves accept elsewhere, *see* Reply at 4-5 ("Plaintiffs . . . expressly attributed economic and business losses to the LLC and grounded their own standing on seizure of their persons and the chilling of constitutional rights.").

*Dep't of Def.*, 395 F. Supp. 2d 17, 20 (S.D.N.Y. 2005) ("[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.").

In any event, Plaintiffs simply disagree with the Court's characterization of their harm, rather than pointing to anything the Court overlooked. *See Bocoum v. Daimler Trucks N. Am. LLC*, No. 17 Civ. 7636 (JPC), 2023 WL 1466597, at *2 (S.D.N.Y. Feb. 2, 2023) (motions for reconsideration are not meant to "secur[e] a rehearing on the merits" (internal quotation marks omitted)). As the Court explained, the "Plaintiffs-specific harms" alleged in the Complaint arise from "unlawful detention and physical restraint," while the statutory sections they sought to enjoin "contain no such provision which would penalize through detention and restraint any individual who insists on a warrant or precompliance review before submitting to an invasive search." *Elfand*, 2025 WL 3248807, at *10 (internal quotation marks omitted). "To the contrary . . . the only relevant provision Plaintiffs challenge at this stage[] merely authorizes the assessment of a civil penalty" for refusing to allow a regulatory inspection. *Id.* (citing N.Y. Cannabis L. 132(1)(b)). And even if relevant to the standing analysis, *but see supra*, the two cases Plaintiffs cite as holding that "statutes imposing *civil penalties* for refusing warrantless administrative searches violated the Fourth Amendment" held no such thing. Motion at 11. Rather, those cases explained that "broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty," and involved litigants who were criminally charged for refusing to allow inspections without a search warrant. *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 525-27, 527 n.2, & 533 (1967); *See v. City of Seattle*, 387 U.S. 541, 541-42 & n.1 (1967). Because the specific laws Plaintiffs have sought to enjoin "merely authorize[] the assessment of a civil penalty," nothing about Plaintiffs' argument changes the

Court's original conclusion that "any forward-looking harm from the threat of such detention would not be fairly traceable to the Challenged Laws, nor would enjoining those laws' application to Plaintiffs redress that harm." *Elfand*, 2025 WL 3248807, at *10.[3]

*Third*, and finally, Plaintiffs argue that the Court "did not analyze" their First Amendment claim, which "independently establishes standing" through the overbreadth doctrine. Motion at 12-13; Reply at 8, 11. But this argument fails to meet the reconsideration standard for several reasons. For one, this Court already held that "Plaintiffs' reliance on First Amendment standing principles," namely overbreadth, "falls short." *Elfand*, 2025 WL 3248807, at *10 n.7. Yet it is axiomatic that a "motion for reconsideration is not an opportunity for litigants to take a second bite at the apple." *Doe v. Fashion Inst. of Tech.*, No. 25 Civ. 950 (JPC), 2025 WL 1920065, at *2 (S.D.N.Y. July 11, 2025). For another, while the overbreadth doctrine allows "a plaintiff to plead a facial First Amendment challenge to a statute with no requirement that the person making the attack demonstrate his own conduct could not be regulated by a statue drawn with the requisite narrow specificity," the doctrine does not altogether "absolve the plaintiff" from showing standing to pursue its "claim or remedy." *Brokamp v. James*, 66 F.4th 374, 389-90 & n.15 (2d Cir. 2023) (internal quotation marks omitted). As the Court explained, "nowhere in Plaintiffs' requested

---

[3] Plaintiffs further criticize the Court for ignoring the standard for pre-enforcement review. Motion at 13-14 ("[A] plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but [proscribed] by a statute, and there exists a credible threat of prosecution thereunder." (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)); Reply at 9-10. But that standard considers whether enforcement is "sufficiently imminent" rather than speculative, *Susan B. Anthony List*, 573 U.S. at 158-59, while this Court's holding addressed aspects of standing other than the imminence of enforcement. *See* State Defts. Response at 6 ("[T]here is no indication . . . that the Court reached the issue of whether any possible future injury to Plaintiffs was speculative."); *cf. Elfand*, 2025 WL 3248807, at *11 (observing that "a suit brought by Empire could very well" reach the merits, "provided that Empire" could "show that its alleged injuries are sufficiently imminent and substantial" (internal quotation marks omitted)).

emergency relief do they seek to enjoin Defendants from detaining" or otherwise penalizing them, "as opposed to enjoining Defendants 'from entering, searching, padlocking, or seizing *any Empire Cannabis Clubs location or property* under the challenged laws absent a judicial warrant.'" *Elfand*, 2025 WL 3248807, at *10 (quoting Compl. ¶ 132(2)). That remaining disconnect dooms Plaintiffs' motion.

Contrary to Plaintiffs' assertions, "Article III standing is not merely a troublesome hurdle to be overcome if possible so as to reach the merits of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787." *United States v. Texas*, 599 U.S. 670, 675 (2023) (internal quotation marks omitted). While the Court remains appreciative of Plaintiffs' constitutional concerns on the merits, *see Elfand*, 2025 WL 3248807, at *11, its original conclusion as to standing likewise respects "our constitutional system," *Texas*, 599 U.S. at 675-76. Because Plaintiffs' grounds for reconsideration would not "alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257, their motion necessarily fails.

### IV. Conclusion

For the above reasons, Plaintiffs' motion for reconsideration is denied. The Clerk of Court is respectfully directed to close the motion at Docket Number 79. As previously ordered, Dkt. 80, the deadline for the State and City Defendants to answer or otherwise respond to the Complaint is twenty-one days from the date of this Opinion and Order. The deadline for Plaintiffs to serve the remaining individual and John Doe Defendants remains January 26, 2026. *See* Dkt. 78.

SO ORDERED.

Dated: January 8, 2026
New York, New York

_____
JOHN P. CRONAN
United States District Judge

11